**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES MOMROW,**

     **Plaintiff,**

    v.

**THE COUNTY OF RENSSELAER
et al.,**

     **Defendants.**
_____

**8:15-cv-521
(GLS/DJS)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Offices of Elmer Robert | ELMER R. KEACH, III, ESQ. |
| Keach, III, P.C. | MARIA K. DYSON, ESQ. |
| One Pine West Plaza - Suite 109 | |
| Albany, NY 12205 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *The County of Rensselaer* | JAMES A. RESILA, ESQ. |
| *& Jack Mahar* | |
| Carter, Conboy Law Firm | |
| 20 Corporate Woods Boulevard | |
| Albany, NY 12211 | |
| | |
| *Elaine Young* | KEVIN A. LUIBRAND, ESQ. |
| Luibrand Law Firm, PLLC | |
| 950 New Loudon Road | |
| Latham, NY 12110 | |
| | |
| *Clifford McLean* | KEVIN G. MARTIN, ESQ. |
| Martin, Rayhill Law Firm | |
| 421 Broad Street | |
| Utica, NY 13501 | |

**Gary L. Sharpe**
**Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Charles Momrow commenced this action pursuant to 42 U.S.C. § 1983 against defendant the County of Rensselaer, the County Sheriff, and employees of the County jail based on an alleged violation of his privacy rights under the Due Process Clause of the Fourteenth Amendment. (Am. Compl., Dkt. No. 25.) Pending are defendants' motions for summary judgment. (Dkt. Nos. 68, 69, 72.)

## II. Background

### A. Facts[1]

Defendant Elaine Young is a registered nurse employed by the County and stationed at the County jail. (Def. Young's Statement of Material Facts (SMF) ¶¶ 2-3, Dkt. No. 69, Attach. 5.) In 2003, she entered into an agreement with Samaritan Hospital that granted her access to its electronic medical records system. (Pl.'s SMF ¶¶ 1-2, Dkt. No. 80.) The agreement was designed to allow Young to use the system for the limited

---

[1] Unless otherwise noted, the facts are undisputed.

purposes of "providing medical treatment to [a] patient," "securing payment for treatment of [a] patient," and "quality assurance activities, professional competence review activities[,] and health care fraud or abuse detection." (Dkt. No. 81, Attach. 41.) For all other purposes, she needed patient authorization or Samaritan's approval. (*Id.*) The County jail installed a system on three of its computers that facilitated access to Samaritan's medical records. (Def. Young's SMF ¶ 4; Dkt. No. 81, Attach. 12 at 18.) Young allowed other employees to access the system using her password, which she taped to the inside of a desk drawer in the nursing office. (Def. Young's SMF ¶¶ 5-9.) As such, other nurses and corrections officers had access to the system via Young's credentials. (Dkt. No. 81, Attach. 12 at 9, 19.)

Defendant Jack Mahar was the County Sheriff at all times relevant to this action. (Dkt. No. 81, Attach. 9 at 30.) In 2004, Mahar helped institute a policy in an effort to trim the excessive use of sick leave by the County Sheriff's Department employees. (*Id.* at 34.) Under the policy, if employees reached a threshold number of sick leave days,[2] they were

---

[2] It is unclear from the record what this threshold number was.

placed on sick leave monitoring.[3] (*Id.* at 41, 50-51.) Employees on sick leave monitoring lost incentives if they continued to take excessive sick leave,[4] including "the ability to switch their shift, work favorable positions, and work overtime." (Pl.'s SMF ¶ 55; Dkt. No. 81, Attach. 9 at 38-39, 41.) In addition, employees taking sick leave were required to notify Mahar's assistant, who maintained a list that tracked employees' sick leave, and they had to submit a doctor's note upon returning to work. (Dkt. No. 81, Attach. 9 at 36-37, 49.) Mahar's command staff also tracked employees' use of sick time and reported back to him. (*Id.* at 34-35.)

Momrow worked for the Department as a maintenance mechanic at the County jail. (Def. McLean's SMF ¶ 1, Dkt. No. 72, Attach. 10.) He testified that he had a good relationship with Mahar. (Def. County's SMF ¶¶ 9, 15, Dkt. No. 68, Attach. 8.) Defendant Clifford McLean, the Superintendent of Building Maintenance at the County jail, was Momrow's supervisor. (Def. McLean's SMF ¶¶ 3-4.) Although Momrow claimed he had a poor relationship with McLean, he never complained to anyone about McLean. (*Id.* ¶¶ 2, 7, 10-11.) During the time that they worked

---

[3] Momrow refers to an employee's placement on sick leave monitoring as "sick abuse status." (Pl.'s SMF ¶ 55.)

[4] Again, it is unclear from the record what this threshold number was.

together, McLean never disciplined Momrow, denied him any time off, placed him on sick leave monitoring, or wrote him up. (*Id.* ¶ 6.) The two frequently ate lunch together, and McLean testified that he had no problem with Momrow. (*Id.* ¶¶ 5, 9.)

In January 2010, Momrow took sick leave and notified Mahar's assistant that he would be absent. (Dkt. No. 68, Attach. 2 at 40; Def. McLean's SMF ¶ 16.) Momrow was admitted to Samaritan for approximately ten days. (Dkt. No. 68, Attach. 2 at 40.) Eventually Momrow returned to work for "[m]aybe a couple of months" but ultimately retired in December 2010. (*Id.* at 41-42.) There is no evidence that Momrow was taking excessive sick leave days so as to be placed on sick leave monitoring in January 2010,[5] (*see generally* Dkt. No. 80), and it is undisputed that he was never denied any sick leave or other injury-related benefits, (Def. County's SMF ¶ 6).

According to Young's testimony, on an unidentified date, McLean asked her "to see if [Momrow] was admitted." (Dkt. No. 81, Attach. 12 at 15.) Young testified that she then accessed Momrow's medical records

---

[5] Mahar testified that employees placed on sick leave monitoring were notified. (Dkt. No. 81, Attach. 9 at 41.) Momrow does not recall being placed on sick leave monitoring. (Dkt. No. 68, Attach. 2 at 40.)

from Samaritan solely to determine whether he had been admitted to the hospital so that McLean could get coverage for him if necessary. (*Id.* at 13.) She also testified that Mahar did not direct her to access Momrow's medical records. (Def. County's SMF ¶ 28.)

McLean denies that he ever asked Young to look at Momrow's medical records. (Dkt. No. 72, Attach. 9 at 31.) He claims that he never knew that there were computerized medical records that Young could access. (Dkt. No. 72, Attach. 8 ¶¶ 6, 13.) Instead, McLean testified that the extent of his knowledge regarding Momrow's absences was that he was notified that Momrow would be absent in January 2010 by Mahar's secretary. (Dkt. No. 72, Attach. 9 at 35.) Further, he testified that he was unaware of the Department's sick leave policy and that he and Mahar never spoke about employees abusing sick leave. (*Id.* at 17, 19.)

However, it is undisputed that someone used Young's account to access Momrow's medical records on January 11, January 14, and January 21, 2010. (Pl.'s SMF ¶¶ 36-37; Def. Young's SMF ¶¶ 10-11.) It is also undisputed that, on at least one of these occasions, the user accessed an array of Momrow's medical records containing sensitive information related to his mental health symptoms, treatment, and thoughts

6

of suicide.  (Pl.'s SMF ¶¶ 40, 45.)  The unauthorized access of Momrow's medical records coincided with numerous other unauthorized accesses stemming from Young's account at the County jail.[6]  (*Id.* ¶¶ 34-35.)  In fact, McLean's records were also accessed without his authorization.  (Def. McLean's SMF ¶¶ 33.)

Momrow did not learn that his medical records were accessed until May 3, 2013.  (Pl.'s SMF ¶ 49.)  McLean, Mahar, and Young maintain that they never learned of Momrow's mental health issues from his medical records.  (Dkt. No. 72, Attach. 9 at 12, 38, 43; Dkt. No. 81, Attach. 9 at 9; Attach. 12 at 14.)

## B. **Procedural History**

On April 29, 2015, Momrow filed a complaint against the County, Mahar, David Hetman,[7] and Young.  (Compl., Dkt. No. 1.)  On February 10, 2016, Momrow filed an amended complaint that added McLean based

---

[6] Momrow asserts that "[n]umerous other employees' records were accessed at the same time they were on 'sick abuse' status and/or had taken an extended or unexpected sick leave." (Pl.'s SMF ¶ 59.) However, the court does not consider this allegation because Momrow fails to support it with a citation to the record. *See* N.D.N.Y. L.R. 7.1(a)(3). Additionally, the court does not consider anything contained within the audit report generated by Samaritan because it cannot. Despite a court order to do so, (Dkt. No. 95), Momrow failed to file this document, amongst others, with the court. Consequently, the court does not consider any of the exhibits that Momrow purported to file under seal but never actually filed. (Dkt. No. 81, Attachs. 19-22, 43-44.)

[7] Momrow recently discontinued this action against Hetman. (Dkt. No. 94.)

upon revelations uncovered during a deposition in another action. (*Compare* Dkt. No. 18, *with* Am. Compl.)  On March 30, 2016, the court denied defendants' motions to dismiss.  (Dkt. No. 31.)

Pending are defendants' above-mentioned motions for summary judgment.  (Dkt. Nos. 68, 69, 72.)  For the following reasons, McLean's motion is granted, (Dkt. No. 72), Young's motion is denied, (Dkt. No. 69), and the County and Mahar's motion, (Dkt. No. 68), is granted in part and denied in part.

### III.  <u>Standard of Review</u>

The standard of review pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV.  <u>Discussion</u>

**A.  <u>Statute of Limitations</u>**

First, Young argues that Momrow's claim is barred by the statute of limitations.  (Dkt. No. 69, Attach. 4 at 4-5; Dkt. No. 88.)  To be sure, Momrow's claim is governed by New York's three-year statute of limitations

8

for personal injury actions and its tolling rules. *See Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001). However, "[w]hile state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues." *Id.* (internal quotation marks and citation omitted); *see Pearl v. City of Long Beach*, 296 F.3d 76, 80-85 (2d Cir. 2002) (describing confusion between tolling and accrual of Section 1983 claims). "The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly*, 254 F.3d at 40-41 (internal quotation marks and citation omitted).

It is undisputed that Momrow learned that his medical records were accessed on May 3, 2013, (Pl.'s SMF ¶ 49), and Young does not argue that Momrow had reason to know any earlier. As such, Momrow's complaint, which was filed on April 29, 2015, (Compl.), is timely.

## B. <u>Substantive Due Process Analysis</u>

"The Fourteenth Amendment's due process clause . . . protects individuals in this circuit from arbitrary intrusions into their medical records." *Hancock v. County of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018). However, "[a] constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in

breaching it." *Id.* "When evaluating executive action that does not involve penological interests, . . . [the court] ask[s] whether the action was so 'arbitrary' as to 'shock the conscience,'" which "depends on the state of mind of the government actor and the context in which the action was taken." *Id.* at 66 (internal quotation marks, footnote, and citation omitted). "[O]nly the most egregious official conduct shocks our consciences—but how egregious conduct has to be in order to be shocking depends on a context-specific balancing." *Id.* (internal quotation marks and citation omitted). "Malicious invasions of privacy are constitutionally unacceptable even in the face of weak individual privacy interests," but "[s]tronger privacy interests will be required to hold executive actors liable who acted with less culpable mental states." *Id.* (internal quotation marks and citations omitted).

1. Mahar

Mahar argues that the claim against him should be dismissed because there is no evidence that he was personally involved in the alleged constitutional violation. (Dkt. No. 68, Attach. 9 at 3-4.)

> It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. The personal involvement

10

of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks and citations omitted). A generous reading of Momrow's response[8] reveals that his theories on Mahar's personal involvement rely on the first and third *Colon* criteria. (Dkt. No. 82 at 6, 11-13.) However, a careful review of the record does not support either theory.

First, there is no evidence that Mahar directly participated in the improper access of Momrow's medical records. The only evidence in the record of a supervisor directing a subordinate to access medical records was Young's testimony that McLean asked her to access Momrow's records. (Dkt. No. 81, Attach. 12 at 14-15.) Conversely, the record reveals that Mahar did not prompt McLean to make this request, nor did he direct

---

[8] Momrow fails to specify which of the *Colon* criteria Mahar satisfies. Instead, he conflates the issues of personal involvement and municipal liability. (Dkt. No. 82 at 17-20.)

11

Young to access Momrow's medical records. (Dkt. No. 72, Attach. 9 at 17, 19; Def. County's SMF ¶ 28.) Second, Mahar had no motive to access Momrow's medical records: the two had a good relationship, (Def. County's SMF ¶¶ 9, 15), there is no evidence that Momrow took excessive sick leave such that he was placed on sick leave monitoring, (*see generally* Dkt. No. 80), and Momrow was never denied any sick leave or injury-related benefits, (Def. County's SMF ¶ 6). To the extent Momrow attempts to link Mahar to the alleged constitutional violation via the Department's sick leave policy, (Dkt. No. 82 at 6, 12-13), there is no evidence that this policy included surreptitiously accessing employees' medical records. Moreover, Momrow fails to explain why this tactic would have been used when the policy already required employees to verify their sick leave by providing a doctor's note upon returning to work. (Dkt. No. 81, Attach. 9 at 49.)

Given the lack of evidence in the record regarding Mahar's involvement, Momrow attempts to manufacture circumstantial evidence in the form of Mahar's propensity for engaging in misconduct, (Dkt. No. 82 at 13), the fact that Mahar did not bring criminal charges against Young, (*id.* at 12), an allegation that Mahar tried to delay Samaritan from notifying patients about the improper access, (*id.*), Lieutenant James Karam's

12

opinion that Mahar was ultimately responsible for some of the unauthorized accesses that occurred, (*id.* at 19), and a statement allegedly made by Young, upon being served in an unrelated action, that "[t]he Sheriff does his dirty work and I get screwed," (*id.* at 11). Even assuming that all of these allegations are true, a reasonable jury could not rely on them to infer that Mahar bore responsibility for invading Momrow's right to privacy.

First, Mahar's alleged role in other acts of unrelated misconduct and his decision not to bring criminal charges against Young are not material to whether or not he was responsible for the unauthorized access of Momrow's medical records. Likewise, Momrow's allegation that Mahar wanted to delay Samaritan sending out notices in order to avoid compromising an unrelated investigation into a non-party employee, (Dkt. No. 81, Attach. 8 at 13-15), is also immaterial. Additionally, even if the court were to credit Karam's opinion, his testimony was clear that unauthorized access of medical records occurred for a variety of reasons—"[s]ome for family members and friends, I believe some for their own personal knowledge . . ., and I believe that in some cases it was done for time and attendance issues," (Dkt. No. 81, Attach. 8 at 43)—and he only attributed blame to Mahar when access occurred for time and

13

attendance issues, (*id.* at 43-44). Moreover, Karam's opinion was informed by his equivocal belief that he heard Mahar "talking in code" on an unspecified occasion about "want[ing] something checked" in relation to a non-party employee who was "taking a lot of sick time off." (*Id.* at 44, 90.) Karam's speculative opinion does not support a reasonable inference that Mahar was personally involved in accessing Momrow's medical records—especially in lieu of the absence of evidence that Momrow was on sick leave monitoring. Lastly, Young's alleged statement upon being served in a separate action is so vague and attenuated that it could have related to a wide array of conduct by Mahar.

As such, Momrow's Section 1983 claim against Mahar is dismissed.

2. *McLean*

McLean argues that the claim against him is barred by the doctrine of qualified immunity. (Dkt. No. 72, Attach. 11 at 13-17.) The court agrees. Even when examining the evidence in the light most favorable to Momrow, it can only be reasonably inferred that McLean asked Young to access Momrow's medical records to determine if he was admitted to the hospital. (Dkt. No. 81, Attach. 12 at 14-15.) At the time Momrow's medical records were accessed in January 2010, it was not clearly established that

14

individuals had "a constitutional right of privacy in medical conditions that are not both serious and stigmatizing[.]"[9] *Hancock v. County of Rensselaer*, 1:13-CV-1184, 2018 WL 4119023 at *5 (N.D.N.Y. Aug. 29, 2018); *see Powell v. Schriver*, 175 F.3d 107, 111-12 (2d Cir. 1999); *Doe v. City of New York*, 15 F.3d 264, 266-67 (2d Cir. 1994). Accordingly, because Momrow fails to present evidence that his admission status was serious or stigmatizing, his claim against McLean is barred by qualified immunity.

### 3. *Young*

Young argues that the claim should be dismissed against her because she only accessed Momrow's medical records, as opposed to disclosing them. (Dkt. No. 69, Attach. 4 at 2-4.) However, the court is not convinced that public disclosure is a necessary element of Momrow's claim in light of the Second Circuit's recent holding that although "[p]ublic disclosure . . . of medical information is a greater breach of privacy than one unauthorized government employee viewing the information," "even

---

[9] However, because it can be reasonably inferred that Young, as a final policymaker, accessed Momrow's medical records relating to his severe depression, which were both serious and stigmatizing, the County's argument regarding qualified immunity, (Dkt. No. 68, Attach. 9 at 7-9), fails. *See Hancock*, 2018 WL 4119023 at *5; *Powell*, 175 F.3d at 111-12; *Doe*, 15 F.3d at 266-67.

15

the weakest privacy interests cannot be overridden by totally arbitrary or outright malicious government action." *Hancock*, 882 F.3d at 68. Young does not even begin to argue that the government's interest in accessing Momrow's medical records outweighed his privacy interest. And, on this record, the court cannot say that Young's actions were not totally arbitrary in light of the less invasive means at her disposal. Moreover, it is of no consequence that Young may not have intended to injure or spite Momrow because "[g]overnment actors with specific duties of confidentiality or care unreasonably invade privacy even if they do so as a result of 'deliberate indifference.'" *Id.* (internal citation omitted); *see County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998). Accordingly, Momrow's Section 1983 claim against Young survives.

   *4.   County*

The County argues that it should be terminated as a party from this action because there is no evidence of a policy or custom to establish municipal liability. (Dkt. No. 68, Attach. 9 at 9-11; Dkt. No. 85, Attach. 1 at 2-4.) Momrow argues "[t]he actions of senior policymaker . . . Young, both as it relates to . . . Momrow, and the pattern of prior and subsequent improper accesses of other individual's medical records, is sufficient to

16

establish municipal liability." (Dkt. No. 82 at 19.)

A municipality may be liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To establish a municipal policy or custom, a plaintiff must demonstrate:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with the municipal employees.

*Layou v. Crews*, No. 9:11–CV–114, 2013 WL 5494062, at *15 (N.D.N.Y. Sept. 30, 2013) (internal quotation marks and citation omitted).

Here, there is evidence supporting Momrow's assertion that "Young was the chief policy maker for the medical unit, and was responsible for implementing all medical policies and procedures, including policies relating to the privacy of medical information." (*Compare* Pl.'s SMF ¶ 76,

17

*with* Dkt. No. 81, Attach. 9 at 123.) Although the County purports to deny this assertion, they do not provide a citation to the record to support their denial. (Dkt. No. 85 at 25.) To be sure, the issue of whether an individual is a final policymaker is determined by state and local law. *See Jeffes v. Barnes*, 208 F.3d 49, 57-61 (2d Cir. 2000). However, although the burden of demonstrating that Young was a final policymaker will ultimately rest with Momrow, at this stage, the County has failed to show the absence of a genuine issue of fact regarding her authority. *See Perez v. County of Rensselaer, New York*, 1:14-cv-950, 2018 WL 3420014, at *10 n.34 (N.D.N.Y. July 13, 2018); *Media All., Inc. v. Mirch*, No. 1:09–CV–0659, 2011 WL 3328532, at *12 (N.D.N.Y. Aug. 2, 2011). Because more information is needed before a determination can be made on this issue, summary judgment is inappropriate. *See id.*; *Capasso v. Metro. Transp. Auth. of State of N.Y.*, 198 F. Supp. 2d 452, 464 (S.D.N.Y. 2002).

## V. Conclusion

WHEREFORE, for the foregoing reasons, it is hereby

**ORDERED** that McLean's motion for summary judgment (Dkt. No. 72) is **GRANTED**; and it is further

**ORDERED** that Young's motion for summary judgment (Dkt. No. 69)

is **DENIED**; and it is further

**ORDERED** that Mahar and the County's motion for summary judgment (Dkt. No. 68) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **DENIED** as it relates to Momrow's Section 1983 claim against the County; and
>
> **GRANTED** in all other respects; and it is further

**ORDERED** that the Clerk terminate McLean and Mahar as parties to this action; and it is further

**ORDERED** that this action is deemed trial ready and a scheduling order shall issue in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 7, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge